■ In the Matter of ALLISON SWEEDAN, Respondent, v JOSEPH BAGLIO, Appellant. [703 NYS2d 562] —Crew III, J. Appeal from an order of the Family Court of Greene County (Lalor, J.), entered January 26, 1999, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 4, for an upward modification of child support.

In February 1995, petitioner and respondent entered into an open-court stipulation governing, *inter alia*, custody of their minor children. Pursuant to the terms of the stipulation, which was incorporated but not merged into the parties' May 1995 judgment of divorce, petitioner was awarded custody and respondent was directed to pay child support in the amount of $500 per month until such time as his son by a former marriage became emancipated; at that point, respondent's child support obligation as to the children of the subject marriage would increase to $700 per month and continue until both children were emancipated or reached 21 years of age, whichever occurred sooner.[1]

Thereafter, in May 1998, petitioner commenced the instant proceeding seeking an upward modification of respondent's child support obligation, alleging, *inter alia*, that she had been unable to secure employment in her chosen profession and, as a result, lacked sufficient funds to meet the needs of the children. The matter proceeded to a hearing, during the course of which the parties offered testimony as to their respective financial resources and obligations and certain tax returns were received into evidence. At the time of the hearing petitioner, who was a licensed practical nurse, was employed as a waitress while respondent, the sole shareholder of Dino-Vesuvio Corporation, was a self-employed restaurant owner.

The Hearing Examiner concluded that the stipulation entered into by the parties in February 1995 did not comply with the requirements set forth in Domestic Relations Law § 240 (1-b) (h), voided that portion of the stipulation detailing respondent's child support obligation and proceeded to conduct a de novo inquiry into the issues of child support, child care ex-

---

1. Although respondent's obligation to support his son ceased in July 1997, he did not begin paying petitioner the additional sum required by the stipulation until September 1998.

penses, medical insurance and uncovered medical expenses. Ultimately, the Hearing Examiner imputed income to respondent in the amount of $62,400 per year ($52,728 after FICA) and fixed respondent's child support obligation at $1,098.50 per month. Additionally, the Hearing Examiner directed that respondent continue to provide health insurance for the children and pay 80% of petitioner's child care expenses and the children's uncovered medical expenses.[2] Respondent's subsequent objections to the Hearing Examiner's decision were denied by Family Court, prompting this appeal.

As a starting point, we note that respondent's brief does not address the Hearing Examiner's decision to void the parties' February 1995 stipulation insofar as it related to respondent's child support obligation and, hence, we deem any challenge in this regard to be abandoned (*see, Reiss v Consolidated Edison Co.*, 228 AD2d 59, 60 n 1, *appeal dismissed* 89 NY2d 1085, *lv denied* 90 NY2d 807, *cert denied* 522 US 1113). Turning to the merits, respondent essentially contends that the Hearing Examiner's findings of fact are insufficient to explain, much less justify, the finding that respondent's annual income for purposes of calculating his child support obligation is $62,400. As our review of the record reveals that the Hearing Examiner's decision indeed is lacking in certain respects, we deem it appropriate to remit this matter to the Hearing Examiner for further proceedings.

We note at the outset that the Hearing Examiner was faced with a rather difficult task, as the parties' testimony regarding their various resources and obligations was not particularly well developed. Notably respondent, who testified that he had operated the restaurant in question for over 20 years, professed to know little about the restaurant's daily receipts or expenses, prompting the Hearing Examiner to resort to respondent's individual and corporate tax returns in an effort to ascertain respondent's true financial condition. In this regard, respondent's financial disclosure form offered little insight as respondent, who testified that he took a "draw" (no amount specified) from the corporation in lieu of paying himself a salary, listed no sources of income.

Under such circumstances, and as a general proposition, we have no quarrel with the Hearing Examiner's decision to impute income to respondent from his various business ventures, including earnings from the restaurant, income

---

**2.** The Hearing Examiner concluded, with respect to petitioner, that she was capable of earning $13,000 per year for purposes of calculating her child support obligation.

received from rental property owned by respondent and any benefit to respondent stemming from the fact that his car and mortgage payments were paid out of his business.[3] The problem lies in the Hearing Examiner's failure to specifically delineate each category/source of income imputed to respondent and, further, the actual dollar amount assigned to each category. For example, the Hearing Examiner makes reference in his decision to the income generated by respondent's rental property but does not expressly address the mortgage expense for such property. Hence, we are unable to address respondent's claim that the Hearing Examiner erroneously attributed as income to respondent the gross monthly rentals from the property. Similarly, although mention is made of certain funds that respondent had received from his now deceased mother and respondent testified as to the additional funds he anticipated receiving from her estate, we are unable to discern whether the Hearing Examiner considered any of these funds in computing respondent's annual income. Finally, to the extent that reference is made to certain insurance paid by the corporation and the corresponding benefit to respondent, it is unclear whether such reference is, as respondent contends, to homeowner's insurance or, rather, to medical insurance, the latter of which respondent testified was "paid out of [his] salary".

In short, although the record may well substantiate the annual income figure attributed to respondent and the corresponding amount of child support awarded, the Hearing Examiner's decision is not sufficiently developed at this stage to permit intelligent appellate review (see, Matter of Miller v Miller, 220 AD2d 133; Matter of Lamkins v Goddeau, 193 AD2d 832). Accordingly, this matter is remitted and the Hearing Examiner is directed to set forth in detail each category/source of income or benefit imputed to respondent and the dollar amount assigned to each category, thereby enabling this Court to review the propriety of the income imputed and the amount of child support awarded.

---

**3.** Respondent testified that although he paid the mortgages for the restaurant and his residence out of the restaurant account, only the mortgage for the restaurant was deducted as a business expense on his individual tax return. According to respondent, the mortgage payment for his residence was deducted from his pay. Resort to the various tax returns contained in the record does not conclusively resolve this issue, and respondent offered no additional documentary evidence in support of this claim. As the record as a whole amply supports the Hearing Examiner's finding that respondent utilized the relationship between the restaurant and the corporation to obscure his actual income, we cannot say that the Hearing Examiner erred in concluding that respondent was receiving a direct benefit in the form of the mortgage and car payments.

Cardona, P. J., Spain, Carpinello and Graffeo, JJ., concur. Ordered that the decision is withheld, and matter remitted to the Family Court of Greene County for further proceedings not inconsistent with this Court's decision.